**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Jasen Hatfield,

      Plaintiff,                                            Case No. 1:16cv579

      v.                                                    Judge Michael R. Barrett

Michael T. Gmoser,

      Defendant.

**OPINION & ORDER**

This matter is before the Court upon the Motion for Summary Judgment filed by Defendants Michael T. Gmoser. (Doc. 22). Plaintiff filed a Response in Opposition (Doc. 29), and Defendant filed a Reply (Doc. 32). Also before the Court is Plaintiff's Motion to Submit Newly Uncovered Evidence in Opposition to the Defendant's Motion for Summary Judgment (Doc. 33); and Defendant's Response in Opposition (Doc. 34) and Plaintiff's Reply (Doc. 35).

**I.    BACKGROUND**

Plaintiff Jasen Hatfield has served as a Butler County Deputy Sheriff since 2005. Defendant Michael T. Gmoser is the elected Butler County Prosecutor. Plaintiff claims that a July 6, 2015 letter written by Defendant to Butler County Sheriff Richard Jones caused him to be reassigned from road patrol to prisoner transport and harmed his reputation. Plaintiff claims the letter was motivated by a personal vendetta Defendant had against Plaintiff.[1]

---

[1] The Court finds it unnecessary to go into the details of the alleged personal vendetta. In evaluating a motion for summary judgment, the evidence must be viewed in the light most

Defendant intended his letter to be for Sheriff Jones only. (Doc. 20, Michael Gmoser Dep. Vol. I, PAGEID# 703). Defendant raised two concerns. (Id. at PAGEID# 767). The first concern was based on a search and arrest conducted by Plaintiff. (Id.) Defendant learned the details of the search and arrest from a transcript of a hearing where Plaintiff testified. (Id. at PAGEID# 692). Plaintiff testified that he arrived at a house at 2:30 in the morning to serve an outstanding warrant on Robert Lewis. (Doc. 18-1, PAGEID# 455). Plaintiff testified that Lewis' girlfriend gave him permission to search the house. (Id. at PAGEID# 458). Plaintiff explained that after finding the bathroom door locked, he kicked in the door and "nearly slipped" on clothes which were on the floor, "nearly injuring" himself. (Id. at PAGEID# 460-461). Plaintiff explained that he charged Lewis with felony obstructing official business and misdemeanor resisting arrest because he had to kick in the door and almost fell. (Id. at PAGEID# 461).

Based on the transcript, Defendant determined that Plaintiff conducted an illegal, unconstitutional search of a private citizen's home at 2:30 am. (Gmoser Dep. Vol. I, PAGEID# 696). Defendant saw a situation where Plaintiff or Lewis' girlfriend could have been shot. (Id.) Defendant was also concerned that the County would be sued in a § 1983 action based on Plaintiff's conduct. (Id.). Defendant wanted the Sheriff to conduct an investigation and make sure deputies were trained on how to conduct constitutional searches. (Id. at 697). Defendant attached the transcript to the letter he wrote to the Sheriff. (Id. at PAGEID# 703).

Defendant's second concern was that an "informed source" had told him that Plaintiff "has a pattern of overcharging for the purpose of gaining overtime from court

---

favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

2

proceedings because of a heavy child support obligation and has increased court time by separating cases so as to be scheduled in both morning and afternoon court sessions." (Doc. 2, PAGEID# 28). In the letter, Defendant explained:

> As a result, this matter has gone from the need for simple remedial education of a zealous deputy to consideration of criminal conduct by a rogue deputy. Offenses that may apply if the allegations are true are theft in office and a pattern of corrupt activity—a second degree felony. Authorities are attached for easy reference.

(Id. at PAGEID# 29).

On July 8, 2015, Plaintiff was given a copy of the letter and was notified that the Sheriff's Office would investigate the allegations in the letter. (Doc. 18, Jasen Hatfield Dep. at PAGEID# 124-125). That same day, Plaintiff was reassigned from road patrol to prisoner transport. (Id. at PAGEID# 124). Plaintiff remained in that assignment until October of 2016. (Id.) Plaintiff showed the letter to: Sergeant Jeff Gebhart; Assistant Prosecutors John Heinkel, Josh Muennich, and David Kash; and defense attorneys Gary McGee, Jon Fox, and Mike Shanks. (Id. at PAGEID# 217-218; 220; 222; 227).

Plaintiff claims that because of the letter, he lost opportunities for overtime and suffered harm to his reputation. In response to Defendant's Motion for Summary Judgment, Plaintiff abandoned his claims for intentional infliction of emotional distress and tortious interference with contract. Plaintiff's remaining claims are violation of the right to substantive due process and defamation.

## II. ANALYSIS

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

3

movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Transcript

In his Motion to Submit Newly Uncovered Evidence in Opposition to the Defendant's Motion for Summary Judgment, Plaintiff seeks to submit a transcript of a taped conversation between Defendant and a third party witness. Plaintiff maintains that this conversation is evidence which supports Plaintiff's contention that Defendant had a personal vendetta against him.

Defendant argues that Plaintiff should not be granted leave to introduce "new evidence" after the close of fact discovery and Defendant's Motion for Summary Judgment has been fully briefed. Defendant also argues that the transcript is unauthenticated and inadmissible.

While the Court finds that the transcript has limited evidentiary value, Plaintiff's Motion to Submit Newly Uncovered Evidence is GRANTED and the Court will consider the transcript as part of its decision on Defendant's Motion for Summary Judgment.

### C. Section 1983

Plaintiff brings his Section 1983 claim against Defendant in his official and individual capacity.

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements:

(1) the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012)). "In a § 1983 claim predicated on a due process violation, there is a certain redundancy in the two elements; both require a link between the injury and the government, since the due process clause is not violated by purely private wrongs." Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 534 (6th Cir. 2008) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Plaintiff claims that by writing the July 6, 2015 letter to Sheriff Jones, Defendant violated his substantive due process rights under the Fourteenth Amendment. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1.

Plaintiff first argues that his substantive due process claim stems from his reassignment which was an "adverse employment action." However, Defendant was not Plaintiff's employer or supervisor. There is no evidence that Defendant was responsible for reassigning Plaintiff. Moreover, "[i]njury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment." *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976)).

Next, Plaintiff argues that a public official carrying out a personal vendetta is "shocking to the conscience."

Substantive due process ensures "freedom from government actions that 'shock

the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003)). As the Sixth Circuit has explained:

> Over the years, the courts have used several tropes to explain what it means to shock the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" *Id.* at 846, 118 S.Ct. 1708 (quoting *Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). Such conduct includes actions "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." *Id.* at 847, 118 S.Ct. 1708 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957)). These are subjective standards, to be sure, but they make clear that the "shocks the conscience" standard is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation. *See id.* at 847–48, 118 S.Ct. 1708.

*Id.* at 589-590. This Court finds that Plaintiff has not established any conduct on the part of Defendant which shocks the conscience. The Sixth Circuit has found that far more defamatory statements did not rise to a conscience-shocking level for substantive due process purposes. *See Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (banning coach from city ice rink and publishing to third parties false statements that coach was sexually abusing minor students did not rise to conduct that shocked the court's conscience). Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim under 42 U.S.C. § 1983.

### D. Defamation

Plaintiff claims that the writing of the letter constitutes defamation under Ohio law.

In Ohio, defamation is defined as "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B–Abell Elevator Co. v. Columbus/Cent.*

6

*Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1289 (Ohio 1995). Whether a statement is defamatory is a question of law for the court to decide. *McGee v. Simon & Schuster, Inc.*, 154 F. Supp. 2d 1308, 1312–13 (S.D. Ohio 2001) (citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 669 (1983) (holding that "it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not.").

In *New York Times Co. v. Sullivan*, the United States Supreme Court held that the United States Constitution requires that a public official may not recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice. 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also Soke v. Plain Dealer* (1994), 69 Ohio St.3d 395, 397, 632 N.E.2d 1282 (Ohio 1994) (explaining that statements made about public officials are constitutionally protected when the statements concern "anything which might touch on an official's fitness for office.") (quoting *Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)). The parties agree that Plaintiff is a public official for purposes of defamation, and therefore he must show that Defendant acted with actual malice.[2]

The Ohio Supreme Court has explained that in this context:

> 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs*, 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus. The phrase "reckless disregard" applies when a publisher of defamatory statements acts with a "high degree of awareness of their probable falsity,"

---

[2]Under the Ohio Supreme Court's interpretation of federal law, a police officer is a "public official" who must show actual malice to prevail on a defamation claim. *See Soke v. Plain Dealer*, 69 Ohio St.3d 395, 632 N.E.2d 1282, 1283 (1994) ("The United States Supreme Court has repeatedly recognized that police officers are public officials."). However, the Sixth Circuit has questioned whether a different standard should apply to apply to a rank-and-file police officer. *Young v. Gannett Satellite Info. Network, Inc.*, 734 F.3d 544, 550 (6th Cir. 2013).

> *Garrison*, 379 U.S. at 74, 85 S.Ct. 209, 13 L.Ed.2d 125, or when the publisher "in fact entertained serious doubts as to the truth of his publication," *St. Amant*, 390 U.S. at 731, 88 S.Ct. 1323, 20 L.Ed.2d 262. *See Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198.

*Jackson v. Columbus*, 117 Ohio St. 3d 328, 331, 883 N.E.2d 1060, 1064 (Ohio 2008). A public official may recover for defamation only upon clear and convincing proof of such actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789, 806 (1974); *see also Burns v. Rice*, 157 Ohio App. 3d 620, 632, 813 N.E.2d 25, 33–34 (Ohio Ct. App. 2004) ("In ruling on a defendant's summary judgment motion in a public official's libel action, the trial court considers the evidence and all reasonable inferences in a light most favorable to the plaintiff to determine whether the plaintiff presented affirmative evidence such that a reasonable jury could find actual malice had been shown with convincing clarity."). Whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law for the court to decide. *Mender v. Chauncey*, 41 N.E.3d 1289, 1298 (Ohio Ct. App. 2015) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 510-511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).

Even if the Court were to find that Defendant's statements in the letter are false, Plaintiff has failed to present sufficient evidence to support a finding of actual malice. Plaintiff argues that a public official advancing his private agenda is sufficiently malicious. However, actual malice "may not be inferred from evidence of personal spite, ill-will or intention to injure on the part of the writer." *Scott v. News-Herald*, 25 Ohio St.3d 243, 248, 496 N.E.2d 699 (Ohio 1986) (citing *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967)). Instead, the focus of an actual malice inquiry

is the conduct and state of mind of the defendant. *Herbert v. Lando*, 441 U.S. 153, 159, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Since "reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice." *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119, 413 N.E.2d 1187 (Ohio 1980). Based on the evidence in the record, the Court finds that Defendant is entitled to summary judgment on Plaintiff's defamation claim.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion to Submit Newly Uncovered Evidence in Opposition to the Defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED**;

2. Motion for Summary Judgment (Doc. 22) is **GRANTED**; and

3. This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　*/s/ Michael R. Barrett*
　　　　　　　　　　　　　　　　　JUDGE MICHAEL R. BARRETT